IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEONARD CHARLES HENDRICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12-cv-00398-WHA |
| | ) | [WO] |
| | ) | |
| JAMES A. CARTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

In this 42 U.S.C. § 1983 action, Plaintiff Leonard Charles Hendricks challenges the conditions of confinement while he was an inmate of the Montgomery City Jail ("Jail") on September 9, 2011. Named as defendants are James A. Carter, Sgt. Allen, Officer R. Hunter, and the City of Montgomery ("City"). Hendricks claims that defendants subjected Hendricks to harsh conditions, used excessive force against him, placed him in danger, and discriminated against him. *Doc. Nos. 1, 14, 15, 16.* Hendricks seeks damages. *Doc. No. 1.*

The defendants filed special reports, supplemental special reports, and supporting evidentiary materials addressing Hendricks's claims for relief. *Doc. Nos. 12, 31, 48, 50.* In these documents, the defendants adamantly deny Hendricks's allegations, and they allege they are entitled to qualified immunity. Additionally, the defendants assert that the complaint is due to be dismissed because Hendricks failed to properly exhaust an administrative remedy

available to him at the Jail with respect to the claims presented in this cause of action.

"[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008). Therefore, the court will treat the defendants' report that Hendricks did not exhaust his administrative remedies as a motion to dismiss. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion to dismiss with respect to the exhaustion defense is due to be denied. The court also construes the defendants' report as a motion for summary judgment, and upon consideration of the motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II. EXHAUSTION

### A. Applicable Law

The Prison Litigation Reform Act ("PLRA") compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle,* 534 U.S. 516, 532 (2002), "irrespective

of the forms of relief sought and offered through administrative remedies," *Booth v. Churner,* 532 U.S. 731, 741 n.6 (2001).  Moreover, "the  PLRA exhaustion requirement requires *proper exhaustion.*"  *Woodford v. Ngo,* 548 U.S. 81, 93 (2006) (emphasis added).

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage.

*Id.* at 90-91, 93 (footnote omitted); *Johnson v. Meadows,* 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).  "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."  *Smith v. Terry,* 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam).

Exhaustion under the PLRA is a "threshold matter" that must be addressed before considering the merits of the case and cannot be waived. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004); *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998) (exhaustion not waivable).  "When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. 'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it

must be dismissed."' *Myles v. Miami–Dade County Corr. & Rehab. Dep't*, 476 F. App'x 364, 366 (11th Cir. 2012) (quoting *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant*, 530 F.3d at 1373-74)).  "If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.'" *Myles*, 476 F. App'x at 366 (quoting *Turner* 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376)); *see also Bryant*, 530 F.3d at 1376 (exhaustion factual dispute is for the judge, not jury, to decide).

**B.  Hendricks Exhausted Administrative Remedies Before Filing Suit**

Defendants argue that Hendricks failed to file any grievance concerning the September 9, 2011, incident, therefore he failed to exhaust his available administrative remedies before filing suit.  *Doc. No. 48* at 1.  Hendricks submits somewhat inconsistent statements about whether he was aware of the grievance procedure, to whom he gave his grievance, and who interviewed him about the September 9, 2011 incident.  Nevertheless, upon review of the undisputed facts of this case as evidenced by the materials filed by the defendants, the materials filed by Hendricks, and the parties' sworn statements, the court concludes that Hendricks sufficiently exhausted his available administrative remedies before filing suit; therefore, the defendants' motion to dismiss for lack of exhaustion is due to be denied.

The record in this case is undisputed that on September 9, 2011, the Jail had a grievance procedure for inmate complaints related to the conditions in the Jail.  *Doc. No. 50-*

*1* at 1-2 (grievance procedure).  Defendants submitted a copy of the grievance process, which

provides, in part, as follows:

> 1) A grievance shall be made in the form of a written statement by the inmate
> following the incident.  The inmate will request the appropriate form
> and address it to the facility's administrator.  The grievance form shall
> be transmitted without interference to the administrator by any officer
> or staff member.

> 2.  Upon receipt of a grievance by the administrator he shall review the
> grievance and determine if it constitutes:
> A.  A prohibited act by an officer or a staff member.
> B.  A violation of the inmate's civil rights.
> C.  A criminal act.
> D.  D. an abridgement of inmate privileges as cited in the handbook or
> posted rules.

*Doc. No. 50-1* at 1 [sic].  Defendants submitted a grievance procedure in effect during

September 2011 entitled, "Grievance Procedure, Policy and Procedure Directive, Policy:

7.01."  *Doc. No. 50-1* at 2.   Policy 7.01, as submitted by defendants, provides in full as

follows:

> POLICY:
> The Municipal Jail has implemented a process for addressing grievances
> within a prescribed time frame.  Grievances will be processed, investigated,
> and decided (subject  to appeal) in accordances with the facility's S.O.P.  A
> written response is given to formal grievances, which includes the basis for the
> decision.  This facility has a procedure for handling emergency grievances.
> All grievances will receive supervisory review.  Inmates will not be retaliated
> or discriminated against for filing a grievance.

> PROCEDURE:

> 1.      Emergency grievances will be given to a Municipal Jail Supervisor for
>         disposition and/or resolution.
> 2.      All Alleged, documented, or substantiated cases of staff violating

inmate rights will be forwarded to the Asst. Warden.

3.      Staff will forward any grievance that includes officer misconduct to the Asst. Warden.

4.      ICE will be notified on issues pertaining to alleged officer misconduct.

*Doc. No. 50-1* at 2 [sic].  Defendants submit the affidavit of Brenda Gooden, the Division Commander at Montgomery City Jail, who states that the grievance policy in effect in September 2011 was "for the inmate to file a formal grievance.  Warden Carter would have an officer meet with the inmate to take a statement and an investigation would be requested and performed by the officer."  *Gooden Aff. - Doc. No. 48-1*, at 1.  Gooden states she and her staff searched diligently, but they could find no record of Hendricks filing a grievance in accordance with the policy at the Jail.  *Id.* at 1.  The evidentiary materials defendants provide do not specify what must be included in a formal grievance, and they do not specify a time frame for processing grievances, for appealing denials of grievances, for appealing the Jail's failure to respond or process grievances, and they do not specify the standard operating procedures at the Jail beyond Gooden's statement regarding an interview of the inmate and an investigation.

      Hendricks makes somewhat inconsistent statements about whether he understood the grievance procedure.[1]  Hendricks also makes somewhat inconsistent comments regarding to

---

[1]In March 2015, Hendricks submitted a statement in which he swears that while he was an inmate at the Jail, he never saw the written policies defendants submitted until April 2014.  *Doc. No. 58* at 2.  Hendricks states that inmates at the Jail were not given a handbook of Jail procedures, and the Jail grievance policy was not posted in the cells.  *Id.*  Hendricks submits affidavits from two persons who spent time in the Jail in 2013, and they state they did not receive a handbook or grievance policy.  *Bunn Aff. - Doc. No. 58-1* at 1; *Stapes Aff. - Doc. No. 58-1* at 2.  Contrary to his 2015 statement, in October 2012 Hendricks swore that page 1, paragraph 7 of Montgomery Municipal Jail Inmate Handbook Rules and Regulation, February 2011, informed inmates that:

whom he gave his grievance.[2]  He also makes inconsistent statements about who interviewed him regarding the September 9, 2011, incident.[3]   Nevertheless, the parties' versions regarding what Hendricks did to exhaust the Jail's administrative remedies conflict, and taking Hendricks's version of the facts as true, defendants are not entitled to have the complaint dismissed for failure to exhaust administrative remedies.  *See Myles*, 476 F. App'x at 366 (step one of the exhaustion inquiry).  Furthermore, the court finds that, based on this evidentiary record, Hendricks did everything required in the Jail policy as shown on this record to exhaust his available administrative remedies.  *Id.*; *see also Bryant*, 530 F.3d at

---

> you have the right to voice grievances and are encouraged to put them in writing.  Grievance forms are available from any jail staff member.  After completing a form forward it to the grievance clerk.  The grievance clerk will give prompt, fair and confidential consideration to all grievances.  Grievance may be read by the warden Designees.  Who is the grievance clerk and the warden designee.  As of today, I have filed six grievances from May 19 or 20 to about May 26, 2011 [sic] and I haven't gotten a response yet, to this day.

*Doc. No. 35* at 4.  Hendricks did not submit a copy of the handbook.  Hendricks refers to the policy as Exhibit D, *id.*, but no such exhibit was filed with the court.  Hendricks also states the officer who brought him a grievance form told him the grievance procedure, and he did what the officer told him to do, which was to put the grievance in a red and white hand mail envelope, and give it to an officer, but there was no policy posted.  *Doc. No. 55* at 2.

[2]In March 2015, Hendricks stated that he gave his grievance to Officer Myrrick to give to the warden. *Doc. No. 58* at 2.  In 2012, Hendricks stated that he handwrote two copies of his grievance because the Jail did not allow him to make copies, and he put the grievance in a red and white hand mail envelope addressed to the grievance clerk.  *Doc. No. 35* at 4.  In 2015, Hendricks stated that  he made copies of his grievance, and he sent one to the court and one to counsel for defendants.  *Doc. No. 57* at 3.  In October 2012, Hendricks submitted a barely legible document entitled, "Municipal Jail Grievance Form," on which it is possible to read his name and the date of September 9, 2011.  The document is unsigned.  *Doc. No. 35-1* at 1.  Hendricks swears that on September 10, 2011, he filed a grievance, but he never received a written response.  *Doc. No. 35* at 3.  Hendricks states he filed his grievance on September 10, 2011.  *Doc. No. 56* at 1.

[3]In March 2015, Hendricks submitted sworn statements that he believes the warden received his grievance and initiated an investigation because Officer Addie interviewed Hendricks about the September 9, 2011, incident.  *Doc. No. 55* at 2; *Doc. No. 56* at 2; *Doc. No. 57* at 2.  Elsewhere in the pleadings, however, Hendricks stated it was Cpl. Wilson who took Hendricks's statement about the September 9, 2011, incident. *Doc. No. 35* at 3.

1376 (exhaustion factual dispute is for the judge, not jury, to decide).

The Jail's grievance policy requires "a written statement by the inmate following the incident" on "the appropriate form and address it to the facility's administrator," and "[t]he grievance form shall be transmitted without interference to the administrator by any officer or staff member." *Doc. No. 50-1* at 1. Defendants' policy refers to a time frame, *Doc. No. 50-1* ("The Municipal Jail has implemented a process for addressing grievances within a prescribed time frame."), but none is included in the record. The policy refers to a form, *Doc. No. 50-1* at 1, but the only form in the record is the one that Hendricks completed, *Doc. No. 35-1* at 1. Hendricks swears he filed a grievance but never received a response. *Doc. No. 35* at 3. On the document he submitted to the court entitled, "Municipal Jail Grievance Form," it is possible to make out his name and the date of September 9, 2011. *Doc. No. 35-1* at 1. The grievance officer does not dispute the document is Hendricks's grievance; she simply asserts there is no record of Hendricks filing it. *Gooden Aff. - Doc. No. 48-1.* Hendricks further swears, however, that he gave the grievance to an officer to give to the warden, whom Hendricks was told was the appropriate grievance administrator. *Doc. No. 58* at 2; *Doc. No. 35* at 3. Thus, the record demonstrates that the day after the September 9, 2011, incident occurred, Hendricks completed a grievance about it on the Jail's form and submitted it to a prison official for delivery to the appropriate grievance clerk. Based on the record before this court, that is all the grievance policy required of Hendricks. *See Jones*, 549 U.S. at 218 (explaining that the administrative remedies "are defined not by the PLRA,

but by the prison grievance process itself"). Nothing in the record suggests what must be included in the grievance or what, if anything, inmates must do when they receive no written response to a grievance, as Hendricks maintains happened to him. Based on this record, Hendricks did all he was required to do under the applicable Jail policy to exhaust his administrative remedies before filing suit under § 1983. Additionally, Hendricks avers that he believes the appropriate prison official did receive his grievance because he was interviewed about the incident, but Hendricks never received the results of the investigation. Consequently, defendants' motion to dismiss for failure to exhaust administrative remedies is due to be denied.

### III. SUMMARY JUDGMENT

The court now addresses the defendants' motion for summary judgment. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4] The party moving

---

[4]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of

for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Hendricks to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a

---

a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the Defendants' properly supported motions for summary judgment, Hendricks is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond

his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003)

12

(citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, a plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Hendricks fails to demonstrate a requisite genuine dispute of material so as to preclude

summary judgment on all of his claims against the defendants.  *Matsushita*, 475 U.S. at 587.

## A.  Summary of Material Facts[5]

The court views the facts in the light most favorable to Hendricks, the nonmoving party.  On September 9, 2011, Hendricks was an inmate at the Jail, Defendant Hunter was an Officer at the Jail, Defendant Carter was Warden at the Jail, and Defendant Allen was a Sergeant at the Jail.

While Allen was supervising breakfast, the food line ran out of trays before Hendricks received his food.  *Hunter Amended Aff. - Doc. No. 31-1* at 1.  Hunter told Hendricks to let Hunter put a red mark on the tip of his fingernail so that Hunter would know Hendricks did not receive his food, and to ensure that other people who had already received their trays did not get back in line for another tray.  *Id.*  Hendricks refused.  *Complaint - Doc. No. 1* at 3. At about 6:00 a.m. or 6:30 a.m., Hunter placed Hendricks in the gym as punishment.  *Id.* When Hendricks refused to come out of his cell to go to the gym, Hunter drew his taser on

---

[5]Hendricks made statements in his amendments to the complaint and in response to the defendants' report that further explain the incident, but Hendricks's statements are not affidavits, are not sworn under penalty of perjury, and do not contain a notary public's stamp or seal.  *See Doc. Nos. 14, 15, 16, 36, 37, 38.* An affidavit is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths," such as a notary public. Black's Law Dictionary 62 (8th ed. 2004). A declaration that is signed "under penalty of perjury" is sufficient to constitute evidence for purposes of a motion for summary judgment.  *See* 28 U.S.C. § 1746; *see also Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555 at *2 (11th Cir. 2007) (per curiam) ("unsworn statements, even from *pro se* parties, should not be 'consider[ed] in determining the propriety of summary judgment'") (quoting *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (per curiam)); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981). The court cautioned Hendricks that he could not rely on unsworn statements or pleadings. *Doc. No. 52.*  Hendricks's unsworn statements will not be considered in determining the defendants' dispositive motion.

Hendricks.  *Id.*  Allen told Hendricks to go with Hunter to the gym.  *Doc. No. 35* at 2, 6.[6]  In the process of moving Hendricks to the gym, Hunter became physically combative by aggressively shoving Hendricks in his back toward the doorway of the cell.  *Id.*  at 1, 7; *Complaint - Doc. No.*  1 at 3.  Hunter placed Hendricks in the gym, where he stayed for three[7] hours on the bare cement, without a mat or anything on which to sit, causing him pain in his back, side, and neck "to this day," hemorrhoids, and pain in his ankles.  *Doc. No. 35* at 1, 5.

Officer McKenzie, who is not a defendant in this case, returned Hendricks to his cell. *Doc. No. 35* at 7.  By the time Hendricks was back in his cell, Allen's shift was over, and Allen was gone.  *Id.*  at 1-2.  Hendricks exited his cell during pill call.  *Id.*  Hunter came out of his assigned post in a cubicle, and he walked down the hall quickly toward Hendricks with his hand on his taser.  *Id.* at 2.  Hendricks admits that he panicked and took a swing at Hunter, an action he characterized as "self defense."  *Id.*  Hunter discharged his taser, hitting Hendricks in the nose.[8]  *Id.*  Hendricks ran and grabbed a broom outside his cell for protection and went into the cell.  *Id.*  Hunter avers that Hendricks "clearly intended on assaulting me with the broom."  *Hunter Aff. - Doc. No. 6-1* at 1; *Hunter Aff. - Doc. No. 31-1* at 1-2.  Officer Addie also avers that "[i]t appeared that [Hendricks] was going to hit Officer

---

[6]This document is Hendricks' Answer to Special Report, and it is signed under penalty of perjury.

[7]Hendricks later states that he exited his cell during pill call, which was at 8 a.m.  *Doc. No. 35* at 6. Hunter suggests that Hendricks spent only an hour in the gym.  *Hunter Amended Aff. - Doc. No. 31-1* at 1. Defendants say Hendricks was back in his cell by 7:50 a.m.  *Hunter Aff. - Doc. No.*  6-1 at 1; *McKenzie Aff. - Doc. No. 6-2* at 1.

[8]In contrast, McKenzie and Hunter aver that Hunter fired, but his first shot missed Hendricks.  *McKenzie Aff. - Doc. No. 6-2* at 1; *Hunter Amended Aff. - Doc. No. 31-1* at 1.

Hunter with the broom." *Addie Aff. - Doc. No. 6-2* at 1.  Addie gave Hendricks a direct order to drop the broom.  *Id.*  Hunter went into the cell and discharged his taser again, hitting Hendricks in the right leg.  *Doc. No. 35* at 7.   Hendricks ran after Hunter, and Officer McKenzie discharged his taser, hitting Hendricks in the right side.  *Id.*  Hendricks claims he did not have the broom in his hand when he was hit.  *Id.*  As Hendricks was falling to the floor from the shock of the taser, Hunter walked up to Hendricks with his taser drawn, pointed it in Hendricks's face, and someone yelled, "Shoot." *Doc. No. 35* at 2-3.  Hunter had no more rounds.  Hendricks looked up into Hunter's eyes, and Hendricks snatched the "bullet" from his side.  *Id.* at 3.  Hendricks reached for Hunter, who ran out of the cell.  *Id.* Hendricks states that instead of walking up toward an inmate with the intent to harm him, a trained officer would have give an inmate an order to lie face down to be cuffed.  *Id.*  Officer McKenzie put cuffs on Hendricks, and Officer Addie took Hendricks to the nurse's station for photographs.  *Id.*

Allen states he is aware that Hendricks was moved to another unit, but Allen's shift was ending at the time, and he was not there for the entire incident.  *Hendricks Aff. - Doc. No. 6-4* at 1.  Carter avers that he has no firsthand knowledge of the incident.  *Carter Aff. - Doc. No. 6-3* at 1.  Major Gooden, who is not a defendant in this case, avers that there is no record of Hendricks filing a grievance at the Jail.  *Gooden Aff. - Doc. No. 48-1* at 1.

## B.  Defendant City of Montgomery

Hendricks names the City of Montgomery as a defendant.   To the extent that

Hendricks is attempting to name the City as a defendant based on the actions of the other defendants, Hendricks must show that the City had a policy or custom that led to his injury. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).   Hendricks does not allege any specific wrongdoing by the City, and Hendricks makes no assertions that the City had any such policy or custom that led to his injury.   Hendricks only suggests a properly trained officer would have used different procedure and acted differently than Hendricks acted.   *Doc. No. 35* at 3.   The City could be liable for failure to provide adequate training to Hunter if the deficient training amounted to "deliberate indifference" to Hendricks's rights. *See Williams v. DeKalb Cnty.*, 327 F. App'x 156, 160 (11th Cir. 2009) (quoting *City of Canton*, 489 U.S. at 388).   Deliberate indifference requires a plaintiff to show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (alteration in original) (quotation marks and citation omitted).   Hendricks presents no evidence to satisfy any of these three requirements.   Hendricks does not assert that the City had any knowledge of the alleged behavior of the defendants or that the City made a deliberate choice to disregard such a risk.   Accordingly, Hendricks fails to create a genuine issue of material fact whether the City violated his rights, and the City is entitled to judgment as a matter of law.

### C.  Defendant Carter

Hendricks names Warden Carter as a defendant.   Carter may not be held liable solely on the basis of respondeat superior. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)

(citations omitted).  Liability against a supervisor may be imposed only if a plaintiff shows the supervisor either personally participated in the alleged constitutional violation or instigated or adopted a policy that violated the plaintiff's constitutional rights.  *Id.* at 1360 ("supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation"); *see also Salas v. Tillman*, 162 F. App'x 918, 922 (11th Cir. 2006) ("an official also may be liable where a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights").

Hendricks maintains that he does not sue Carter simply in his supervisory capacity.[9] *Doc. No. 35* at 3.  Instead, Hendricks states that "Carter is being sued because he did not resolve the incident as a warden when a grievance was filed on my behalf and the warden never answered.  It is clear that Hunter's plan [was] to intentionally harm me when I did not let him mark on my hand with that red marker."  *Id.* at 3.

Although the court has found that Hendricks did submit a grievance to an officer for delivery to the appropriate grievance administrator, that finding was sufficient only to satisfy the exhaustion requirement under 42 U.S.C. § 1997e(a).  Carter swears he has no first-hand knowledge of the September 9, 2011, incident involving Hendricks.  *Doc. No. 6-3.*

---

[9]To the extent Hendricks claims that Carter is liable because a policy or custom at the Jail resulted in harm to Hendricks, or because Carter failed to train Hunter adequately, Hendricks's claim against Carter fails for the same reasons it fails against the City.

18

Hendricks does not assert the interviewing officer was Carter, and even when viewing the evidence in the light most favorable to Hendricks, there is no showing on this record that Carter actually received the grievance from Hendricks, that Carter was the administrator who initiated an investigation under the Jail's grievance process, or that Carter knew about the alleged unconstitutional acts.   *Doc. No. 35* at 3*; Doc. No. 50-1* (grievance process). Hendricks has presented no evidence sufficient to create a genuine issue of disputed fact with respect to the pending claim that Carter received Hendricks's grievance and failed to respond and resolve his grievance about Hunter's actions.    Moreover, Hendricks has no Constitutionally protected right to the use of a grievance system. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011).  Accordingly, Carter is entitled to judgment as a matter of law.

### D.  Defendants Hunter and Allen

Hendricks sues Hunter for an unprovoked act of maliciously shoving Hendricks in the back and pointing his taser at Hendricks when he would not come out of the cell, for placing Hendricks in the unlawful conditions in the gym, for the incident in which Hendricks was shot with the taser, where he was forced to stand, sit or lie down on the cement floor, causing him pain and injury.[10]  *Doc. No. 35* at 1.  Hendricks states defendants did not use reasonable

---

[10]Hendricks claimed that Hunter discriminated against Hendricks because Hunter pointed his taser at Hendricks after Hendricks disobeyed an order, but Hunter did not point his taser at another inmate who disobeyed Hunter.  *Doc. No. 16* at 1.  Hendricks provides no admissible evidence to that he and the other inmate were similarly situated, and that Hunter failed to treat them similarly in violation of the Equal Protection Clause.  *See City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

force under the circumstances. *Id.* at 3. Hendricks sues Allen for ordering Hendricks to go with Hunter to the gym, as well as "depriv[ing] me of my breakfast and intentionally provok[ing] me into a hostile attitude." *Doc. No. 35* at 6, 7-8 (alteration added).

In response, defendants argue, among other things, that Hendricks does not state a viable claim under the Eighth Amendment, and that they are entitled to qualified immunity. *Doc. No. 6*. The court will address each of Hendricks' claims.

### 1. Conditions - Eighth Amendment

Hendricks claims that the conditions in the gym violated his Eighth Amendment rights. The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" that is "totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (internal quotations and citations omitted). In the Eighth Amendment context there is no "static test" for determining which conditions violate the Constitution. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Rather, whether a violation exists requires a fact intensive determination of what conditions exist and whether objectively and subjectively the conditions offend the Constitution by amounting to seriously sufficient deprivations to which officials were deliberately indifferent. *See, e.g. Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Regarding the objective component, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official

is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (2001) (internal citations omitted).   On the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *Campbell*, 169 F.3d at 1364 (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38; *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm

exists-and the prison official must also "draw that inference." *Farmer*, 511
U.S. at 837.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must

be a strong likelihood, rather than a mere possibility before [the responsible official's] failure

to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th

Cir. 1990) (citations and internal quotations omitted).

The facts as alleged by Hendricks fail to establish that the condition about which he

complains, that is, placement in the gym for three hours and deprivation of his breakfast,

unconstitutionally exposed him to a substantial risk of serious harm, which was so "extreme"

to be actionable. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). In addition, the

record is devoid of evidence that defendants had knowledge of specific facts from which an

inference could be drawn that a substantial risk of harm existed to Hendricks, and that

defendants drew this inference and thereafter ignored this risk. *See Carter*, 352 F.3d at 1349-

50 ("a generalized awareness of risk . . . does not satisfy the subjective awareness

requirement."). Even if defendants' decision to place Hendricks in the gym was negligent,

mere negligence does not satisfy the deliberate indifference standard under the Eighth

Amendment. *Id.* at 1350. The Constitution is not implicated by negligent acts of an official

causing unintended loss of or injury to life, liberty or property. *Daniels v. Williams*, 474 U.S.

327, 328 (1986); *see also Whitley*, 475 U.S. at 319 (holding that a violation of the Eighth

Amendment must involve "more than an ordinary lack of due care for the prisoner's . . ..

safety").

Based on the record before it, the court finds that Hendricks' placement in the gym for three hours after he disobeyed an order and officers arranged for additional breakfast trays does not rise to the level of a constitutional violation. The condition about which Hendricks complains, under the circumstances, does not rise to the level of deliberate indifference by defendants sufficient to establish a constitutional violation, and summary judgment is due to be granted in their favor on this claim. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-50.

### 2.  Excessive Force - Qualified Immunity

Hendricks alleges that Hunter used excessive force against him on two occasions--first when Hunter shoved Hendricks, and second, when Hunter used a taser on Hendricks. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, "'there is no room for qualified immunity' in Eighth Amendment . . . excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful. *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008). "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for

his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). Thus, a qualified immunity defense is not available when a plaintiff properly pleads the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Id.* at 1302; *see also Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Accordingly, this court will consider whether Hendricks's allegations concerning the force that defendant Hunter used against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

### 3.  Excessive Force - Eighth Amendment

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard for evaluating such excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (relying on *Whitley*, 475 U.S. at 320-21). This standard contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. Factors to consider in making this determination include "the extent of injury suffered," "the need for application

24

of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (citation omitted); *see also Whitley*, 475 U.S. 321 (listing factors); *Skrtich*, 280 F.3d at 1300-01. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. 321.

The "absence of serious injury" provides some indication of the level of force used, and the "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind,'" *Hudson,* 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327) (further quotation marks and citation omitted). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam). In *Wilkins*, the Supreme Court held that an inmate stated an Eighth Amendment excessive force claim when he alleged "he was punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation,'" and he suffered "a bruised heel, back pain, and other injuries requiring medical treatment." *Id.* at 38; *see also Hall v. Bennett,* 447 F. App'x 921, 923-24

(11th Cir. 2011) (unpublished) (per curiam) (citing *Wilkins*, 559 U.S. at 37-38) ("[W]hile [plaintiff's] medical reports did not note any obvious injuries, we are mindful of the fact that the focus of the inquiry is on the nature of the force applied, not the extent of the injury."). Recognizing that the relief in such a case could be slender, the Court added that "even if [the inmate] succeeds, the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover." *Wilkins*, 559 U.S. at 40.

### a. Move to the Gym

After a thorough review of the facts and viewing such in a light most favorable to Hendricks, the court concludes that challenged use of force by defendant Hunter when Hendricks was first removed from his cell is, at best, a "*de minimis* use[] of physical force" which is excluded from "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments" as such contact "is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10; *Sepulveda v. Burnside*, 170 F. App'x 119, 124 (11th Cir. 2006) (claim that officer "jerked [inmate] by the ankle while checking his leg shackles . . . [did] not rise to the level of a constitutional violation."); *Hall v. Santa Rosa Correctional Institution*, 403 F. App'x 479, 482 (11th Cir. 2010) (officers who forced inmate's hands behind his back to apply handcuffs after inmate refused orders and became combative "did not use unconstitutional excessive force [and] no constitutional violation occurred."); *McCall v. Crosthwait*, 336 F. App'x 871, 872 (11th Cir. 2009) (no constitutional violation occurred where officer pushed detainee out of jail's elevator causing inmate to hit partially open steel

door and fall against plexiglass window thereby suffering bruised shoulder and elbow); *Johnson v. Moody*, 206 F. App'x 880, 885 (11th Cir. 2006) (minor nature of injury suggested that officer's pushing or kicking metal tray door on inmate's hand was *de minimis* use of force which did not constitute Eighth Amendment violation); *Anderson v. Sullivan*, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (officers who pushed prisoner into a bar and put his hands behind his back to apply handcuffs did not administer excessive force). Summary judgment is therefore due to be granted in favor of defendant Hunter on the claim that Hendricks drew his taser on Hendricks to force him out of his cell and then shoved Hendricks in the back while moving Hendricks to the gym. Thus, to the extent that Hendricks claims that Allen should have stopped Hunter from moving Hendricks to the gym, the claim against Allen also fails.

**b. Taser**

Hendricks claims that Hunter used excessive force against him when Hunter used a taser gun against him. Under the undisputed facts of this case, Hunter's action can be characterized only as "a good-faith effort to maintain or restore discipline" and not a "malicious and sadistic" act of harm. *See Hudson*, 503 U.S. at 6-7 (citation omitted). Analyzing the factors in *Whitley*, 475 U.S. at 321, Hendricks admittedly was the first aggressor, swinging at Hunter while Hunter was walking quickly toward Hendricks with his hand on his taser . Although Hunter had aimed his taser at Hendricks earlier in the day, it is undisputed that Hunter did not have his taser drawn when he walked toward Hendricks.

Given the split-second unfolding of events and Hendricks's initial aggressive action, Hunter reasonably perceived the need to react quickly to the threat Hendricks posed to institutional security and to Hunter's safety.    The force Hunter used was proportional to the risk Hendricks posed because it is important to institutional security that inmates not engage in physical violence toward guards who are in charge of their supervision.  *E.g.*, *Shinholster v. Rich*, 2008 WL 765824, at *5 (S.D. Ga. Mar. 24, 2008) ("The case law has long condoned physical force against inmates who physically threaten a prison official.") (footnote omitted). Instead of submitting to authority, Hendricks ran away and grabbed a broom, and Hunter believed Hendricks was going to assault Hunter with it.  *Doc. No. 6-1* at 1.  McKenzie also believed Hendricks was going to hit Hunter with the broom.  *Doc. No. 6-2* at 1.  Hendricks's actions thereby necessitated further security measures by Hunter and McKenzie. Hendricks does not challenge McKenzie's actions in firing his taser at Hendricks.  The effects of the taser were tempered  when Officer Addie took Hendricks to the nurse's station after Hendricks was secured.  From these considerations, and viewing the evidence in the light most favorable to Hendricks, the evidence does not support a reliable inference of wantonness in the infliction of pain to rise to a constitutional violation under the cruel and unusual punishment provisions of the Eighth and Fourteenth Amendments, in light of the security risk posed and the need to restore order in the facility.  *See Hudson*, 503 U.S. at 7-8.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.   The motion to dismiss on behalf of the defendants be DENIED to the extent the defendants seek dismissal of this case due to Plaintiff Hendricks's failure to properly exhaust an administrative remedy previously available to him in the Montgomery City Jail.

2.   The motion for summary judgment filed on behalf of the defendants be GRANTED;

3.   This case be dismissed against the defendants with prejudice in accordance with Federal Rule of Civil Procedure 56.

It is further

ORDERED that **on or before July 30, 2015**, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en*

*banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 16th day of July, 2015.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE